IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THURMAN MEARIN,                                )
                                Plaintiff      )
                                               )
        vs.                                    )        Civil Action No. 08-597
                                               )        Judge Donetta W. Ambrose/
PETE VIDONISH, Unit Manager;                   )        Chief Magistrate Judge Amy Reynolds Hay
SUPERINTENDENT LOUIS FOLINO;                   )
MARLENE M. STEWART, Coordinator,               )
P.R.C.; ROBERT McCOMBIE, Activities;           )
LAUREL HARRY, Unit Manager; CARLA              )
SWARTZ, Unit Manager; TIMOTHY I.               )
MARK, Deputy Chief Counsel for Hearing         )
& Appeals; BRIAN COLEMAN, Deputy;              )
MARK CAPOZZA, Major of the Guard;              )
DAVID SACKS, Employee; CINDY G.                )
WATSON, Chief Grievances Officer; and          )
DORENA VARNER, Chief Grievances                )
Officer,                                       )
                                Defendants     )


REPORT AND RECOMMENDATION

I.      RECOMMENDATION

        It is respectfully recommended that Defendant's partial motion to dismiss be granted in

part and denied in part.  It should be granted with respect to Plaintiff's Fourteenth Amendment

procedural due process claim of being placed in Administrative Custody.  It should be denied as

to Plaintiff's First Amendment claim of retaliation.

II.     REPORT

        Thurman Mearin ("Plaintiff"), a/k/a "Thurman Marion" and "Thurman Mearion,"[1] is a

_____

        [1]  The Pennsylvania Department of Corrections inmate locator website provides this information
at:

        http://www.cor.state.pa.us/inmatelocatorweb/

state prisoner, serving a life sentence for first degree murder.  Plaintiff has brought suit in federal

court, pursuant to 42 U.S.C. § 1983 against twelve defendants, all of whom are employed by the

Pennsylvania Department of Corrections ("DOC").  The Defendants have filed a partial motion

to dismiss which, for the reasons following, should be granted in part and denied in part.

**Relevant Factual and Procedural History**

After paying the filing fee, Plaintiff's original complaint (Doc. 1) was formally docketed

on May 2, 2008, but was signed April 10, 2008.  The original complaint named only two

defendants, i.e., Pete Vidonish, Plaintiff's unit manager at SCI-Greene, and Louis Folino, the

Superintendent at SCI-Greene.  Plaintiff essentially claimed that he came to SCI Greene on July

5, 2005 and that sometime thereafter, Pete Vidonish falsified documents so as to place Petitioner

in Administrative Segregation for 343 days.  Plaintiff was placed in Administrative Custody

("AC") for the first time on February 26, 2006.  Plaintiff also claimed that Defendant Folino

ignored Plaintiff's pleas to Folino concerning Vidonish's allegedly falsifying documents in

Petitioner's files.  The alleged documents falsely indicated that Plaintiff refused a cell mate.

Plaintiff also complained that Folino was aware that Plaintiff was wrongfully kept in AC for a

separate stay of an additional 256 days, thus making Plaintiff wrongfully detained in AC for a

total of 599 days over two distinct periods of time.  Plaintiff alleges that all of this was as a result

of the Defendants wanting to retaliate against Plaintiff for his filing of a lawsuit against a security

Captain and others in Plaintiff's old prison, SCI-Graterford, a lawsuit, we note was not docketed

---

(Site last visited November 12, 2009).

until October 30, 2006 in the Middle District.[2]  On August 3, 2007, Plaintiff was told by his counselor that the reason he was being kept in AC was because he refused a cell mate.  (Doc. 1 at 7, ¶ 12).  On August 8, 2007, Plaintiff received a copy of his file, which showed that his records were falsified because it revealed that Plaintiff refused a cell mate, which Plaintiff contends is not true.  Attached to the original complaint were many exhibits.

On June 5, 2008, the Clerk's office filed on the docket Plaintiff's Amended Complaint, which was signed on May 10, 2008.  (Doc. 4).  That amended complaint added seven new defendants in addition to the two previously named in the original complaint.  Those new defendants were: Marlene Stewart - PRC coordinator; Robert McCombie - Activities Director; Laurel Harry - Unit Manager; Carla Swartz - Unit Manager; Timothy Mark - Deputy Chief Counsel for Hearing and Appeals; Brian Coleman - Deputy; Mark Capozza - Major of the Guard; David Sacks - an employee; Cindy G. Watson, Chief Grievance Officer; and Dorena Varner - Chief Grievance Officer.   Plaintiff essentially complained that all of the newly added defendants violated his rights to due process when they concurred in or did nothing to prevent his continuation in AC status, knowing that he was being kept in AC under falsified documents.  Again, this amended complaint was accompanied by many exhibits.

On October 23, 2008, the Clerk's Office received a motion for leave to file another amended complaint (Doc. 14), with the proposed amended complaint attached.  The Court

---

[2]  Mearin v. Dohman, et al., No. 2:06-cv-04859 (E.D. Pa.), available at

https://ecf.paed.uscourts.gov/cgi-bin/DktRpt.pl?688187182075161-L_961_0-1

Although the complaint was not docketed until October 30, 2006, it purported to be signed on February 13, 2006.  The Court notes that the Dohman case is still pending in the Eastern District.

granted the motion to amend and the second amended complaint was filed.  (Doc. 16).  This second amended complaint did not have any exhibits attached.  This second amended complaint also deleted two defendants, namely, Cindy Watson, and Dorena Varner, both described as Chief Grievance Officers.

However on December 30, 2008, the Clerk's office docketed Plaintiff's motion for leave to file a supplemental complaint.  (Doc. 17).  The motion was granted and a supplemental complaint was filed.  (Doc. 19).  That supplemental complaint made specific allegations against Defendants Varner and Watson, alleging that they denied his final grievance appeals and that in the course of denying his appeals. Defendant Varner stated untruths in her response to the final grievance.  (Doc. 19 at 3, ¶¶ 13 to 15).  Plaintiff alleges that the foregoing violated his First and Fourteenth Amendment rights.  (Id., at 4, ¶ 21).

Hence, the operative complaints are Document 16, the second amended complaint, and Document 19, the supplemental complaint.  The operative complaints allege a procedural due process violation in the keeping of Plaintiff in AC and a First Amendment retaliation claim based on his placement in AC and the denial of his appeals and grievances challenging the same.

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants filed a partial motion to dismiss the operative complaints and a brief in support.  (Doc. 34, 36).  Plaintiff filed his response to the motion to dismiss.  (Doc. 43).  Defendants filed a reply to the response.  (Doc. 45).  Plaintiff filed what he styled a rebuttal to the reply filed by the Defendants.  (Doc. 46).

**Applicable Legal Standard**

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it

does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974

(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46

(1957)).[3]   Under this standard, the court must, as a general rule, accept as true all factual

allegations of the Complaint and all reasonable inferences must be viewed in the light most

favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir.

1985).  Nevertheless, under the 12(b)(6) standard, a "court need not . . . accept as true allegations

that contradict matters properly subject to judicial notice or by exhibit."  Sprewell v. Golden

State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir. 2001).

Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as

set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d

126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir.

1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  Bell Atlantic

Corp., 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S.  265, 286 (1986)).

       In addition to the complaint, courts may consider matters of public record and other

matters of which a court may take judicial notice, court orders, and exhibits attached to the

complaint when adjudicating a motion to dismiss under Rule 12(b)(6).  Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).  In addition, the Court of

Appeals in Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004),  held that a "defendant may submit

an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

_____

       [3]  In light of Twombly's overruling of the Conley v. Gibson standard that provided motions to
dismiss should only be granted if "no relief could be granted under any set of facts," we reject Plaintiff's
invocation of that Conley standard.  (Doc. 43 at 2, citing Flannigan v. Shively, 783 F.Supp. 922, 927
(M.D. Pa. 1992)).

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the indisputably authentic exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]"  Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.  Or put another way,  a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In addition, because Plaintiff was, at the time of the filing of this civil action,[4] a prisoner and because he named governmental entities or employees thereof as defendants, the screening provisions of the Prisoner Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply herein.  In addition, because he complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status, Dkt. [10], to pursue this suit.   The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss.  See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000).  Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its

----

[4]  See, e.g., In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the day he files a civil action, the PLRA applies.");  Colby v. Sarpy County, No. 4:01CV3130, 2006 WL 519396, at *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated, i.e., whether the plaintiff is incarcerated when the complaint is filed, determines whether the PLRA applies to a case.").

dismissal upon such ground pursuant to the screening provisions of the PLRA.  See Lopez; Dare
v. U.S., CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd, 264
Fed.Appx. 183 (3d Cir. 2008).

**Discussion**

1.  Statute of Limitations

Defendants properly raised the statute of limitations defense in their motion to dismiss.
See, e.g., Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)
("While the language of Fed.R.Civ.P. 8(c) indicates that a statute of limitations defense cannot be
used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the
complaint facially shows noncompliance with the limitations period and the affirmative defense
clearly appears on the face of the pleading.");  Woodward v. Paige, 106 F.3d 414 (Table), 1997
WL 31548, at *1 (10th Cir. 1997)("Where a complaint shows on its face that the applicable
statute of limitations has expired, dismissal for failure to state a claim is appropriate.").  From the
face of the original complaint, it did appear that some of the claims were time barred.  However,
considering the operative complaints, i.e., Documents 16 & 19, and the fact that in Plaintiff's
response, he invokes the doctrine of equitable tolling and also the discovery rule, we find that in
the current procedural posture of this case, dismissal on the basis of the statute of limitations is
not appropriate but is better left to some factual development and so is more appropriately raised
and disposed of in a summary judgment motion.  Hence, the motion to dismiss based upon the
statute of limitations defense should be denied without prejudice to being raised in a properly
supported summary judgment motion.

2.  Procedural Due Process

Defendants correctly note that Petitioner is making a procedural due process claim about his time being spent in AC.  Plaintiff's complaint establishes that he spent two separate periods in the AC.  One period was for 256 days and another period was for 343 days.  The Defendants contend that these periods of time spent in AC were insufficient to deprive Plaintiff of a liberty interest and so no procedural due process claim can be made out.  We agree.

Conducting a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause and, if so, the second question to be asked is whether the process afforded the complaining party comported with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

A protected liberty interest may arise from one of two sources: (1) directly from the Fourteenth Amendment's due process clause itself or (2) from state law.  Hewitt v. Helms, 459 U.S. 460, 466 (1983).   There is no liberty interest created directly by the Fourteenth Amendment that prevents an inmate from being subjected to disciplinary or administrative custody.  See Sandin v. Conner, 515 U.S. 472, 484 (1995) ("Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation"); Stephany v. Wagner, 835 F.2d 497, 499 (3d Cir. 1987)("the Due Process Clause does not give a prisoner a liberty interest in remaining in the general prison population").

Neither has Pennsylvania created a liberty interest in being free from Administrative Custody.  Addressing the issue of state created liberty interests, the United States Supreme Court

8

in <u>Sandin v. Conner</u>, 515 U.S. at 484, held that a state government "may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Placing Plaintiff in AC for two distinct periods of 343 days and 256 days does not impose such an atypical and significant hardship as a matter of law under the facts alleged in the operative complaint and so does not deprive him of any liberty interest.  See <u>e.g.</u>, <u>Griffin v. Vaughn</u>, 112 F.3d 703 (3d Cir. 1997) (confinement in administrative custody for fifteen months with only one hour of exercise per day five days per week and strict restrictions on outside contact did not amount to an atypical and significant hardship and thus did not deprive prisoner of a liberty interest); <u>Smith v. Luciani</u>, No. Civ. A. 97-3037, 1998 WL 151803, at *5 (E.D. Pa. March 31, 1998) ("In this case, plaintiff was subjected to seven months disciplinary time, a period of time half of that implicated in <u>Griffin</u>.  Therefore, punishment of seven months in administrative custody, does not present 'the type of atypical, significant deprivation [in the context of prison life] in which a state might conceivably create a liberty interest.'  <u>Sandin</u>, 515 U.S. at 486 (1995)."), <u>aff'd</u>, 178 F.3d 1280 (3d Cir. 1999) (Table).  Having been deprived of no liberty interest, Plaintiff was not constitutionally entitled to any process.  Hence, whatever "flaws" occurred in the Program Review Committee ("PRC") 30 and/or 90 day reviews, Plaintiff was not denied his procedural due process rights because he possessed no such rights given that the result of the process did not deprive him of a liberty interest.

9

Plaintiff does attempt to argue that his conditions while he was in administrative custody did expose him to atypical and significant deprivations.  See, e.g., Doc.16 at 8 to 9, ¶¶ 32 to 41; Doc. 43 at 5.  Plaintiff complains that he was exposed to a light being on in his AC cell for 24 hours a day, and he was prohibited to communicate with other inmates through cell doors and that visitation was limited and only non-contact visits were permitted.  He also contends that he lost his prison job and rehabilitative programming.  However, none of these conditions is sufficient to distinguish the cases cited above.  These appear to be universal conditions of AC[5] and thus, were the conditions that were held not to have deprived a liberty interest in Griffin v. Vaughn, and Smith v. Luciani, etc.

Plaintiff's arguments are especially unpersuasive in light of Young v. Beard, 227 Fed.Appx. 138 (3d Cir. 2007).  In Young, the prisoner plaintiff was sanctioned with an aggregate of 930 days of **disciplinary** confinement.  The prisoner-plaintiff alleged his procedural due process rights were violated.  The Young court rejected this contention holding that the plaintiff therein was not deprived of a liberty interests as follows:

> Next, Young argues that prison officials violated his Fourteenth Amendment due process rights at various stages of the disciplinary proceedings. He claims that the hearing examiner improperly denied his requests to present witnesses at the hearings, and he also challenges the sufficiency of the evidence supporting the hearing examiner's findings of guilt. Young presumes he is entitled to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539,

---

[5]  See, e.g., Shoats v. Horn, 213 F.3d at 142, which described the conditions of AC as follows:

Inmates in administrative custody are not allowed to have radios, televisions, telephone calls (except emergency or legal), personal property except writing materials, or books other than legal materials and a personal religious volume. Non-legal visits of one per week are allowed under appropriate security procedures designated by the Program Review Committee (PRC). Pennsylvania does not provide inmates in administrative custody with educational programs, and all meals are eaten in the inmates' cells.

563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which held that a prisoner facing the deprivation of a constitutionally cognizable liberty interest following an administrative hearing has a due process right to certain procedural protections, including notice of the charges twenty-four hours prior to the hearing, an opportunity to call witnesses and present documentary evidence, and a statement of the grounds for disciplinary action. However, an inmate's procedural due process rights are not triggered unless the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003) (*quoting Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). We have held that fifteen months in administrative custody in a Commonwealth prison does not amount to a deprivation of a cognizable liberty interest, *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997), and it appears from the policy statement attached to the Commonwealth's summary judgment motion that the conditions in disciplinary custody are not substantially different from those experienced by a prisoner in administrative custody. *See also Mitchell*, 318 F.3d at 532, remanded to 2005 WL 1060658 (E.D.Pa. May 5, 2005) (noting this similarity). Despite having ample opportunity to do so, Young has failed to state facts or submit evidence showing that he was subject to conditions in disciplinary confinement that meet the *Sandin* standard. We therefore agree with the conclusion of the Magistrate Judge, as stated in her Report and Recommendation of December 6, 2004, that Young has not shown a deprivation of a cognizable liberty interest.

In like manner, Plaintiff's allegations concerning the conditions of his relatively brief stays in AC, which, even taken in the aggregate total only 599 days, as compared to the 930 days of comparatively harsher conditions found in disciplinary custody[6] in Young, simply fail to state a claim under procedural due process because those conditions are, as a matter of law, not atypical and significant within the contemplation of Sandin.  Accordingly, Plaintiff's procedural due process claims fail to state a claim upon which relief can be granted.

In the alternative, even if we were to assume for the sake of argument that Plaintiff was deprived of a liberty interest by his two placements in AC, Plaintiff himself, via his allegations

---

[6] See, e.g., Israel v. Superintendent of S.C.I. Fayette, Civ.A. 08-428, 2009 WL 693248, at *5 (W.D.Pa. March 13, 2009)("In Young, the prisoner plaintiff was sanctioned with an aggregate of 930 days of disciplinary confinement, wherein the conditions **are somewhat harsher** than the conditions of administrative confinement.")(emphasis added).

and the exhibits attached to his earlier complaints, establishes that he received procedures of

PRC reviews at least every 90 days.  Despite his allegations that such were "rote and perfunctory

in violation of established [DOC] policy[,]"[7] these 90 day reviews satisfied any process that he

was due.  See, e.g., Doc. 4-2 at 5 (PRC review dated 2/20/07); id., at 8 (PRC review dated

8/7/07); id., at 18 (PRC review dated 5/25/06); id., at 19 (PRC review dated 8/17/06).

Furthermore, we note that in his appeals of the PRC decisions, Plaintiff did not make any

allegations that his PRC reviews were rote and perfunctory.  (Doc. 4-2 at 9).[8]

     Hence, either because he was deprived of no liberty interest, or because he received all

the process that he was due via the 90 day PRC reviews and appeals therefrom, Plaintiff's

---

[7]  To the extent that Plaintiff is trying to make out a procedural due process claim based on the
fact that the PRC reviews did not comply with sate policy, such fails as a matter of law.  The Supreme
Court has observed that "[a] liberty interest is of course a substantive [in contrast to a procedural] interest
of an individual;  it cannot be the right to demand needless formality.  Process is not an end in itself.  Its
constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of
entitlement. . . .  The State may choose to require procedures for reasons other than protection against
deprivation of substantive  rights, of course, but in making that choice the State does not create an
independent substantive right."  Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983) (internal quotations,
citations and footnotes omitted).  See also United States v. Jiles, 658 F.2d 194, 200 (3d Cir. 1981)("The
simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire
a federal constitutional dimension.") (quoting Slotnick v. Staviskey, 560 F.2d 31, 34 (1st Cir. 1977));
Shango v. Jurich, 681 F.2d 1091, 1101-02 (7th Cir. 1982) ("[A] state created procedural right is not itself
a liberty interest.... States may decide to engage in such proceedings, but the due process clause does not
compel them to do so because no constitutionally cognizable substantive interest of the prisoner is at
stake."); Hayes v. Muller, No. 96-3420, 1996 WL 583180, at *7 (E.D. Pa.  Oct. 10, 1996) ("[A] state
does not violate an individual's federal constitutional right to procedural due process merely by deviating
from its own established procedures.").  Having been deprived of no liberty interest by the Defendants'
alleged failure to abide by DOC policy governing 90 day PRC review hearing proceedings, the complaint
fails to state a procedural due process claim.

[8]  While it is true that Plaintiff requested that the exhibits attached to his earlier complaints be
withdrawn from the record, Doc.  14  at ¶ 5, the Court denies his request that such exhibits be withdrawn
from the record.  Having offered them to the Court for its consideration, just because it is now
inconvenient for Plaintiff to have the Court consider them is no reason for the Court to ignore them or to
strike them from the record.  They are properly considered by the Court as part of the record of this case,
either as documents proffered by Plaintiff attached to his complaints or as documents which are
indisputably authentic.

procedural due process claims should be dismissed for failure to state a claim upon which relief can be granted.[9]

3. 1st Amendment Retaliation

Plaintiff's one remaining claim against all of the Defendants is a First Amendment retaliation claim that the Defendants took adverse actions in retaliation for Plaintiff's filing of a lawsuit and a grievance against Captain Dohman and others who worked at SCI-Graterford in addition to retaliating against Plaintiff for filing grievances and grievance appeals against some of the Defendants herein.  (Doc. 16 at 9, ¶ 43).

The Defendants have moved to dismiss Plaintiff's claims against Defendants Stewart, McCombie, Harry, Swartz, Mark, Coleman, Capozza, Watson, and Varner based upon their lack of personal participation in the constitutional wrongs.  The Defendants base their argument on the fact that these defendants lacked personal involvement in the constitutional wrongs.  The Defendants mount two arguments, both of which the Court finds unpersuasive.  First, Defendants argue that "supervisory official's misconduct cannot be merely a failure to act" citing Commonwealth of Pennsylvania v. Porter, 659 F.2d 306, 336 (3d Cir. 1981), and that Plaintiff seeks to hold these defendants liable merely for their failure to act.  (Doc. 36 at 11).  It is true that the Court stated in Porter, that supervisory "**officials' misconduct cannot be merely a failure to act**. Such officials must have played an affirmative role in the deprivation of the plaintiffs' rights, *i.e.*, there must be a causal link between the actions of the responsible officials named and the challenged misconduct." (emphasis added).  Porter, 659 F.2d at 336.  However, the emphasized

---

[9]  We note that Plaintiff affirmatively eschews any procedural due process claim concerning the taking or destruction of his property.  Rather, he claims such is merely an adverse action under his claim of retaliation.  (Doc. 43 at 5 to 6).

words are dictum taken out of context by the Defendants.  The whole sense of the passage, in

context, is that in order for a supervisor to be liable, a plaintiff must establish a causal link

between the supervisor's "sins" (be they sins of omission or commission) and the constitutional

injury.[10]  The Court of Appeals for the Third Circuit more recently noted in Natale v. Camden

County, 318 F.3d 575, 584 (3d Cir.2003), that a supervisory policy maker and/or governmental

employer may be liable "where 'the policymaker has failed to act affirmatively at all, [though]

the need to take some action to control the agents of the government is so obvious, and the

inadequacy of existing practice so likely to result in the violation of constitutional rights, that the

policymaker can reasonably be said to have been deliberately indifferent to the need.' " (some

internal quotation marks omitted).  See also Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294

(3d Cir. 1997) (noting that "[o]ur cases have held that 'actual knowledge and acquiescence'

suffices for supervisory liability because it can be equated with "personal direction" and "direct

discrimination by the supervisor." (quoting Rode, 845 F.2d at 1207), *abrogated on other grounds*

*by*, Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006);  Black v. Stephens,

---

[10]  The entire passage reads as follows:

> To afford relief against the members of the Borough Council, the requirements of *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), must be satisfied. Thus, the officials' misconduct cannot be merely a failure to act. Such officials must have played an affirmative role in the deprivation of the plaintiffs' rights, i. e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct. *Id.* at 375-77, 96 S.Ct. at 606-07. As this court observed in *Lewis v. Hyland*, 554 F.2d 93 (3d Cir.), *cert. denied*, 434 U.S. 931, 98 S.Ct. 419, 54 L.Ed.2d 291 (1977), Rizzo "was aimed at the failure of plaintiffs to prove the existence of an unconstitutional policy or plan adopted and enforced by the official defendants. Throughout, the Court emphasized the complete absence of any causal link between the individual police officers' conduct and the responsible authorities. Mere invocation of the words 'pattern' or 'plan' did not suffice without this causal link." *Id*. at 98.

Id., at 336.

14

662 F.2d 181, 189 (3d Cir. 1981)(noting that "mere acquiescence by police chief when he is on notice of constitutional violations [by his subordinates] is sufficient to trigger liability under section 1983")(citing, Maclin v. Paulson, 627 F.2d 83, 86 (7th Cir. 1980));  Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir.  1976).  Hence, contrary to Defendants' contention, failure to act on the part of a supervisory official, where the supervisor has knowledge of the violation amounts to acquiescence and can form the basis for liability because of the supervisor's own wrongdoing, i.e., failing to correct or prevent constitutional wrongs.

Secondly and relatedly, the Defendants claim that a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such [unconstitutional] conduct" by subordinates.  (Doc. 36 at 10, quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990)).  Defendants cite to Brown as if it held that a supervisor has no affirmative duty to train, supervise or discipline; Brown did not hold such.  In Brown, the court was addressing a qualified immunity defense for actions taken in 1985 and the Brown court concluded that, at that time, i.e., 1985, the law was not clearly established that supervisors had an affirmative obligation.  See, e.g., Rosenberg v. Vangelo, 93 Fed.Appx. 373, 379 (3d Cir. 2004).  However, at the time Brown was decided, i.e., in 1990, an affirmative obligation on supervisors to train, supervise and discipline was clearly established.  Rosenberg, 93 Fed.Appx. at 379.  Accordingly, Defendants' reliance on Brown is misplaced and the failure to train, supervise or discipline **may** constitute sufficient personal participation to state a claim, if other conditions are met, making this issue of supervisory liability based on supervisory wrongdoing more properly addressed in a summary judgment motion.  See, e.g., Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001)(listing conditions required to impose supervisory liability).  Thus, on this basis, the

15

Defendants have failed to show that the complaint fails to state a claim upon which relief can be granted as to these defendants.

Hence, if this Report is adopted the only remaining claim will be the First Amendment retaliation claim against all of the defendants.  The Fourteenth Amendment procedural due process claim will be dismissed.

III.   <u>CONCLUSION</u>

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 19 November, 2009

cc:    The Honorable Donetta W. Ambrose
       United States District Judge

       Thurman Mearin
       AM-8063
       SCI Greene
       175 Progress Drive
       Waynesburg, PA 15370

       All counsel of record by Notice of Electronic Filing