IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THURMAN MEARIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-597 |
| | ) | |
| v. | ) | Senior Judge Ambrose/ |
| | ) | Magistrate Judge Bissoon |
| PETE VIDONISH, Unit Manager; SUPERINTENDENT LOUIS FOLINO; MARLENE M. STEWART, Coordinator, P.R.C.; ROBERT McCOMBIE, Activities; LAUREL HARRY, Unit Manager; CARLA SWARTZ, Unit Manager; TIMOTHY I. MARK, Deputy Chief Counsel for Hearing & Appeals; BRIAN COLEMAN, Deputy; MARK CAPOZZA, Major of the Guard; DAVID SACKS, Employee; CINDY G. WATSON, Chief Grievances Officer; and DORENA VARNER, Chief Grievances Officer, | ) | |
| Defendants. | ) | Re ECF No. [64] |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' motion for summary judgment, ECF No. [64], be granted.

### II. REPORT

Thurman Mearin, also known as "Thurman Marion" and "Thurman Mearion" ("Plaintiff"), is a State prisoner, serving a life sentence for first degree murder. Plaintiff has brought suit in federal court, pursuant to 42 U.S.C. § 1983 against twelve defendants, all of whom are employed by the Pennsylvania Department of Corrections ("DOC"). This case has

been the subject of prior proceedings, ECF Nos. [47] and [48], which disposed of all but Plaintiff's First Amendment retaliation claims. The First Amendment retaliation claims are principally those found at ECF No. [16] at 9, ¶ 43, wherein Plaintiff alleges that "Plaintiff['s] protected conduct was his civil action against SCI Graterford staff communicated to defendants and grievance and appeals filed against defendants." The allegedly retaliatory adverse actions taken against Plaintiff in response to this conduct occurred principally when Plaintiff "was place[d] in solitary confinement [i.e., Administrative Custody] and [he suffered] loss [of] his [prison] job and classification status." Id., ¶ 44.

A. **Relevant Factual and Procedural History**

The operative complaint is comprised of ECF Nos. [16] and [19]. The Defendants filed a motion for summary judgment, ECF No. [64], a concise statement of facts, ECF No. [69], and a brief in support. ECF No. [66]. Plaintiff filed his responsive concise statement, ECF No. [67], and a brief in opposition to the Defendants' motion. ECF No. [68].

B. **Applicable Legal Standard**

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. See Walters ex rel. Walters v. General Motors Corp., 209 F.Supp.2d 481, 484 (W.D. Pa. 2002). Once that burden has been met, the non-moving party must set forth "specific

facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. See Fed.R.Civ.P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

**C. Discussion**

    1. Statute of Limitations

Defendants first raise the statute of limitations, pointing out that because Plaintiff filed his complaint no earlier than April, 10, 2008, any claims arising prior to April 10, 2006, are time-barred. ECF No. [66] at 10.[1] Thus, according to Defendants, to the extent that Plaintiff complains that in July 2005, he was transferred to SCI-Greene and his property was stolen and/or destroyed, such claims are time barred. Defendants also point out that Plaintiff complained of

---

[1] Defendants had raised their statute of limitations defense in their motion to dismiss, but the Court previously found that the statute of limitations issue was more properly resolved at the summary judgment stage. ECF No. [47] at 7.

his initial placement in Administrative Custody ("AC") (also referred to by the parties as the "RHU" or by Plaintiff as "the Hole"), which occurred in February 2006. Defendants also note that Plaintiff conceded that it was in January or February 2006, when he realized that his records were being falsified so as to justify his placement in AC. Id. Defendants have satisfied their initial summary judgment burden to show that such claims are time-barred in order to shift the burden to Plaintiff to come forward with evidence to show that his claims were not time-barred.

In response, Plaintiff mostly provides argument but little or no evidence. Specifically, Plaintiff argues that he is entitled to tolling of the statute of limitations during the time he is exhausting administrative remedies. ECF No. [68] at 2. Assuming that this is correct, Adderly v. Ferrier, __ F.App'x __, 2011 WL 816204, at *2 (3d Cir. March 10, 2011) ("we decline to now decide whether exhaustion can serve as a basis for equitable tolling in § 1983 cases"), and he would be entitled to equitable tolling of the statute of limitations, Plaintiff bears the burden to show entitlement to such equitable tolling. See, e.g., Urban v. Bayer Corp. Pharm. Div., 245 F.App'x 211, 213 (3d Cir. 2007) ("Appellant's claim was time-barred and . . . she failed to demonstrate an entitlement to equitable tolling"). Because Plaintiff is claiming entitlement to equitable tolling due to his exhaustion of administrative remedies, it would be his burden to adduce evidence as to what the relevant administrative remedies were, and when these administrative remedies were initiated, so as to know when to begin to equitably toll the statute of limitations and when these administrative remedies were completed so as to know when to start the statute of limitations up again.

Plaintiff has utterly failed to carry his burden. We note that Plaintiff attached evidentiary materials to his responsive concise statement of material facts. ECF No. [67]. However, none of those materials satisfy Plaintiff's burden. The closest Plaintiff comes to proffering any evidence

of his exhaustion of administrative remedies is when he provides evidence concerning the second time he was placed in AC, which occurred on or about November 21, 2006. See, e.g., ECF No. [67-2] (document dated November 28, 2006, which is a request to staff member/appeal of PRC decision to keep Plaintiff in AC); ECF No. [67-3] (is Defendant Folino's response to Plaintiff's November 28, 2006 appeal); ECF No. [67-4] (purportedly the final appeal to the Office of Chief Counsel). See also ECF No. [1] at 7, ¶ 11 (noting that Plaintiff was released from his first placement of 256 days in AC on November 9, 2006, and was placed back in there on November 21, 2006). The document dated November 28, 2006, and the subsequent appeals cannot serve to help Plaintiff because the administrative remedy does not relate to the claim for which he must show entitlement to equitable tolling. Defendants point out that Plaintiff's claims that accrued prior to April 10, 2006, were time-barred. This would include Plaintiff's claim that his initial placement in AC, which happened in February 2006, was done in retaliation for his filing of the suit against Captain Dohman. The document dated November 28, 2006, and the associated appeals relate, not to Plaintiff's first placement in AC, but to this second placement in AC that occurred on November 21, 2006. ECF No. [16] at 3, ¶ 11. Hence, the November 28, 2006 document could not serve to toll any claim with respect to Plaintiff's first placement in AC nor any other claim arising prior to April 10, 2006, but could only serve to toll any claims concerning Plaintiff's second placement in AC. Accordingly, we find that there is no genuine issue of material fact that Plaintiff's claims, which accrued prior to April 10, 2006, are time-barred.

Moreover, to the extent that Plaintiff attempts to proffer these documents to show that he was exhausting his claim of being retaliated against by his being placed in AC, there is absolutely no mention of any retaliation in Plaintiff's appeal nor in the appeal responses. Hence,

it would appear that his retaliation claims are not properly exhausted. See, e.g., Boyd v. U.S., 396 F.App'x 793, 796 (3d Cir. 2010) ("As all parties concede, Boyd's initial grievance—which made no mention of retaliation—was resolved in his favor in August 2004. . . . [In order] to pursue a claim in federal court based on retaliation, he must first have exhausted administrative remedies for that claim. Winning on one claim does not excuse failure to exhaust on a different claim [i.e., the retaliation claim] that is factually related."); Stewart v. Kelchner, 358 F.App'x 291, 296 (3d Cir. 2009) ("Because the unprocessed grievance did not raise Stewart's claim against Kelchner, it cannot provide a basis for concluding that he exhausted his available remedies as to this claim.").

2. Merits of Remaining Retaliation Claims

Next, Defendants move for summary judgment as to Plaintiff's remaining retaliation claims. In order to prove a *prima facie* case of retaliation, a plaintiff must adduce evidence of the following: (1) that he engaged in constitutionally protected activity; (2) that he was subject to adverse actions by a state actor; and (3) the constitutionally protected activity was a substantial motivating factor in the state actor's decision to take adverse action. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) (citing Mt. Health City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1997)). If the plaintiff proves these elements, the burden shifts to the state actor to prove that it would have taken the same action without the purported unconstitutional factors. Mt. Healthy City Sch. Dist. Bd. of Educ., 429 U.S. at 287. In the prison context, the state actor may rebut a plaintiff's claim by showing that their actions were motivated by legitimate penological objectives. Pratt v. Rowland, 65 F.3d 802 (9th Cir. 1995). Because retaliation claims can easily be fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against

6

a prisoner. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiff claims that Defendants retaliated against him for his filing of a prisoner civil rights suit against a Captain Dohman who worked at SCI-Graterford, the prison in which Plaintiff was housed just prior to being transferred to SCI-Greene.[2] Defendants have adduced evidence that they had no knowledge of Plaintiff's filing/preparation of this lawsuit at the time of the alleged adverse actions, which they had taken against Plaintiff, and so, there can be no causal connection between Plaintiff's protected activity of filing/preparing the suit and their actions regarding Plaintiff. ECF No. [65-1] at 3 to 21 (affidavits of all of the Defendants, denying knowledge of Plaintiff's lawsuit against Captain Dohman). This was sufficient to shift the burden to Plaintiff to come forward with evidence that his filing of the lawsuit against Dohman was a substantial motivating factor in the Defendants' allegedly retaliatory actions.

Plaintiff failed to carry that burden. The only thing Plaintiff points to in response to Defendants' denial of any knowledge of the Dohman suit, is "Complaint No. 6." ECF No. [67] at 4, ¶ 47. We assume by this reference, Plaintiff means ECF No. [16] at 2, ¶ 6,[3] wherein Plaintiff alleged that "on February 26, 2006, I was coming from work and was told by a[n] officer, that orders were given to him and I was place[d] on administrative custody by order of Security Department and Ms. Niemic, Unit Manager for classification for Z code (single cell). As I was being lead [sic] away a[n] officer made a comment to another officer saying, I was the

---

[2] We take judicial notice of Plaintiff's suit against Captain Dohman, which was filed in the Eastern District of Pennsylvania. Mearin v. Dohman, 2:06-CV-4859 (E.D. Pa.). Although Plaintiff's *pro se* complaint in Dohman was purportedly signed on February 13, 2006, it was not received by the Eastern District Clerk's office until October 30, 2006. Id. (ECF No. [1]). Service was not effectuated until November 6, 2007. Id. (ECF No. [9]).

[3] This is a repeated difficulty. Plaintiff's citations to the record are not clear; the Court is not always certain to what Plaintiff is referring.

7

lawsuit guy."

We note that this utterly fails to show any knowledge on the part of any of the named Defendants, so as to demonstrate a causal connection between his mere preparation[4] of a lawsuit and the allegedly retaliatory act of placing Plaintiff in AC.[5] Hence, Defendants would be entitled to summary judgment as to Plaintiff's claim that his placement in AC in February 2006 and/or his being maintained there was retaliation for his preparation/filing of the lawsuit against Dohman.

To the extent that Plaintiff alleges that Defendants retaliated against him by falsifying records, Defendants are entitled to summary judgment because Plaintiff fails to show that his records were falsified. Defendants all denied that they falsified his records or that they had any knowledge that his records were falsified. ECF No. [65] at 7, ¶¶ 37 to 38. In response, the only evidence Plaintiff points to is the "fact" that Defendant Folino placed a false statement in Plaintiff's records. ECF No. [67] at 3, ¶ 38 (citing to Exhibit 3 which is found at ECF No. [67-3] at 1 (the December 4, 2006 response by Defendant Folino regarding Plaintiff's appeal of the second time Plaintiff was put into AC)). In that December 4th response, Defendant Folino denies Plaintiff's request to be placed back into general population because "[i]n view of your history of adjustment difficulties while incarcerated, the Program Review Committee is exercising due caution relative to your release to general population." Id . Plaintiff apparently takes issue with the fact that he did not have any "adjustment difficulties while incarcerated." ECF No. [67] at 3,

---

[4]  We say "preparation" because although Plaintiff purportedly signed the complaint against Captain Dohman on February 13, 2006, he did not file the lawsuit until October 30, 2006.

[5]  Although not necessary to our disposition, we note that one would expect that Plaintiff would have filed a contemporaneous grievance/PRC appeal, alleging that his transfer to AC was in retaliation for his preparation of the lawsuit against Captain Dohman, given the corrections officer's alleged statement that Plaintiff is "the lawsuit guy." The record contains no such contemporaneous grievance/PRC appeal.

8

¶ 38. However, Plaintiff's record[6] shows that he did have difficulties sharing a cell with other inmates. See ECF No. [69-1] at 7, ¶ 5 (noting that Plaintiff was "freaking out" his cellmate by standing over him at night while the cellmate is asleep);[7] ECF No. [1-15] at 1 ("You constantly ask for a Z code but do not fit the criteria per the psych. Department.");[8], ECF No. [50-4] at 1 ("The problem is that no inmate wants to cell with you."); ECF No. [50-5] at 1 ("Relief: the prisoner [i.e., Plaintiff's cellmate] removed from the cell I want my Z code back."); ECF No. [50-1] at 1 ("I want and need to be by myself."). Indeed, Plaintiff readily admits that as of October 24, 2010, "Plaintiff has had 55 cellies in 31 months and did not get along with any of them." ECF No. [67] at 1, ¶ 25. The record as a whole is clear that by his behavior toward his cellmates, Plaintiff communicated his desire to not have cellmates.

No reasonable juror could find that Plaintiff's records were falsified in this regard, i.e., that Defendant Folino's statement that Plaintiff had "adjustment difficulties while incarcerated" was intentionally false, and, hence, no reasonable juror could find that Plaintiff met his burden of showing an adverse action taken against him.

Moreover, that Plaintiff engaged in intimidating behavior toward his cellmates such that they did not want to be his cellmate qualifies him as "being a danger to himself or to others" which was the general rationale given for his placement in AC the second time. ECF No. [1-5]

---

[6] "Where the record **taken as a whole** could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587 (emphasis added).

[7] Plaintiff essentially concedes the accuracy of the report that he was standing over or at least near his cellmates at night. See ECF No. [67-2] at 1 ("On November 16, 2006, I was given a cellie. I could not sleep nor could my cellie. The next day he move[d]. On November 21 06, I was move[d] to BB, the same thing happen[ed].").

[8] Plaintiff has produced no evidence that, at the time he was placed in AC for refusing a cell mate, which was November 21, 2006, he, in fact, possessed a Z code at that time.

9

at 1 (first 90-day PRC review conducted in February 2007 of Plaintiff's placement in AC in November 2006). Contrary to Plaintiff's intimations, ECF Nos. [1-9] at 1; [16] at 5, ¶ 21, there is no conflict between Plaintiff being deemed "a danger to others" as the reason for his placement in AC and Plaintiff being found to have refused a cellmate as being the reason for his confinement in AC, which was another listed justification for his placement in the AC the second time. ECF No. [4-1] at 7. The record shows that Plaintiff's behavior toward his cellmates, which constituted a refusal of cellmates, also clearly constituted, at the very least, intimidation or an implied danger to those cellmates. Hence, on this record, no reasonable jury could find that Plaintiff's records were falsified by Defendant Folino.

Plaintiff also appears to claim that he was retaliated against by Defendants because he filed grievances. ECF No. [19] at 1 to 2, ¶ 1. Plaintiff does not, however, specify for which grievances he was retaliated and which actions were allegedly taken in retaliation for those grievances. Defendants provided affidavits, indicating that none of them have ever retaliated against Plaintiff and that their actions were motivated by legitimate penological interests. ECF No. [65] at 8 to 9, ¶ 48 (citing specific portions of Defendants' affidavits). In response, Plaintiff cites to 15 different paragraphs of his responsive concise statement of material facts. ECF No. [67] at 4, ¶ 48. None of these cited paragraphs nor the supporting evidence cited in them create a genuine issue of material fact to support Plaintiff's contention that Defendants retaliated against him for his filing of grievances.[9] In light of the foregoing, the Defendants' motion for summary judgment should be granted.

### III. CONCLUSION

---

[9] In fact, only three of the 15 cited paragraphs even mention grievances. ECF No. [67] at ¶ 37 (mentioning Grievance No. 244365), id. at ¶¶ 42 & 44 (both of which reference Grievance Nos. 212421 and 242110).

Accordingly, it is respectfully recommended that Defendants' summary judgment motion be granted as to Plaintiff's sole remaining claims of retaliation because all such claims arising before April 10, 2006, are time-barred and because Plaintiff failed to adduce evidence in support of his *prima facie* case.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules, objections to this Report and Recommendation are due by June 20, 2011. Failure to file objections by this date will constitute a waiver of any appellate rights. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

                                         s/ Cathy Bissoon
                                         Cathy Bissoon
                                           U.S. Magistrate Judge

Dated: June 1, 2011

cc:    The Honorable Donetta W. Ambrose
        United States Senior District Judge


        Thurman Mearin
        AM-8063
        SCI Greene
        175 Progress Drive
        Waynesburg, PA 15370